Filed 4/8/16

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>*

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| JARED M. VILLERY, | F071088 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CV282075) |
| DEPARTMENT OF CORRECTIONS AND REHABILITATION, | **OPINION** |
| Defendant and Respondent. | |

<u>THE COURT</u>

APPEAL from a judgment of the Superior Court of Kern County. J. Eric Bradshaw, Judge.

Jared M. Villery, in pro. per., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Jennifer A. Neill, Assistant Attorney General, Sara J. Romano and Michael G. Lagrama, Deputy Attorneys General, for Defendant and Respondent.

-ooOoo-

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part IV of the Discussion.

Jared M. Villery appeals from an order sustaining a demurrer to his petition for writ of mandate. The petition sought an order directing personnel at the California Correctional Institution (CCI) in Tehachapi, California to process his inmate grievances in accordance with applicable regulations. The trial court determined that habeas corpus relief was a more appropriate remedy and dismissed Villery's mandamus petition.

As a general rule, a petition for a writ of mandate may be dismissed if the plaintiff has an alternate "plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086.)[1] In this appeal, we consider whether habeas corpus relief was available to remedy Villery's claim in the *ordinary* course of law. We conclude it was not.

California courts have long regarded a writ of habeas corpus as an *extraordinary* remedy. In comparison, mandamus is the traditional remedy to compel a public official to perform a legal duty. The legal duty at issue here is the processing of inmate grievances submitted on CDCR Form 602, which we have held involves ministerial tasks. (*Menefield v. Foreman* (2014) 231 Cal.App.4th 211, 216-217 (*Menefield*).) Based on the nature of both habeas corpus and mandamus, we conclude that habeas corpus relief was not available to Villery "in the *ordinary* course of law." (§ 1086, italics added.) The ordinary way to compel the Department of Corrections and Rehabilitation (CDCR) to process inmate grievances as required by its own regulations is a writ of mandate, not a writ of habeas corpus. (See *Wright v. State of California* (2004) 122 Cal.App.4th 659, 667 [remedy for alleged delay in conducting third formal level review is "a writ of mandate ordering [CDCR] to perform its duty by completing the review"].) Thus, Villery stated a claim for a writ of mandate, habeas corpus was not the more appropriate remedy, and the demurrer should have been overruled.

---

[1] All unlabeled statutory references are to the Code of Civil Procedure.

2.

We therefore reverse the judgment and remand for further proceedings.

## FACTS AND PROCEEDINGS

Villery, during the times relevant to this lawsuit, was a prisoner housed at CCI. In January and February of 2014, Villery submitted three inmate grievances to CDCR regarding allegedly wrongful acts and omissions by prison staff. He contends the grievances and subsequent inquiries about their status have not been processed and "all applicable time deadlines for prison staff to respond to these have expired."

In May 2014, Villery filed a petition for writ of mandate to compel CDCR officials to process his grievances in accordance with the regulations set forth in article 8 of title 15 of the California Code of Regulations.[2] Villery named CDCR as a defendant and listed Kimberly Holland, CCI's warden, and I. Alomari and T. Jackson, appeals coordinators,[3] as real parties in interest.

Villery alleged that he "is particularly aggrieved by [CDCR's] failure to carry out its ministerial duties because [he] must exhaust his available administrative remedies before he may seek judicial relief, yet the injuries he has suffered due to prison officials['] misconduct are ongoing." Villery alleged the refusal to process his grievances will permanently block his First Amendment right to access and relief from the courts on the issues raised in the grievances. He also alleged he "has no other clear, speedy or

---

[2] All further undesignated references to "Regulations" are to title 15 of the California Code of Regulations.

Article 8 contains 11 sections, which are designated sections 3084 through 3085. Regulations section 3084.1, labeled "Right to Appeal," states that the "process is intended to provide a remedy for inmates … with identified grievances" and "appeals shall be processed according to the provisions of Article 8." In this context, "appeal" includes the initial inmate grievance submitted on CDCR Form 602 (Rev. 08/09). (*Menefield*, *supra*, 231 Cal.App.4th at pp. 215, fn. 2 & 217.)

[3] An "appeals coordinator" shall be designated by each institution head. (Regulations, § 3084.5, subd. (a).) The appeals coordinator "shall screen all appeals prior to acceptance and assignment for review." (Regulations, § 3084.5, subd. (b).)

3.

adequate remedy at law through which to seek relief on the issues raised in the instant petition." Villery's prayer for relief requested a writ commanding CDCR to process his three grievances according to applicable regulations.

In October 2014, CDCR filed a demurrer to Villery's petition. Villery filed objections to the demurrer and CDCR filed a reply. In November 2014, a hearing on the demurrer was held and Villery appeared telephonically through Court Call.

On December 2, 2014, the court filed a minute order sustaining the demurrer without leave to amend. The minute order stated that Villery had another, more appropriate remedy because (1) the petition alleged the failure to process his inmate grievances violated his right to access the courts and (2) habeas corpus relief is available when a prison inmate claims he has been denied access to the courts.

In January 2015, Villery filed a notice of appeal that refers to "the judgment."

## DISCUSSION

I.     APPELLATE REVIEW

A.     Appealable Judgment or Order

The appellate record contains no judgment or order of dismissal. The trial court's docket does not list the entry of a judgment or an order of dismissal. An unsigned minute order sustaining a demurrer without leave to amend in not an appealable order. (*Nowlon v. Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437, 1440; see § 904.1.)

In March 2015, this court issued an order staying the appeal and directing Villery to file a letter brief addressing the jurisdictional basis for the appeal. After receipt of the letter brief, this court entered an order stating we would deem the appeal to be taken from an appealable order and vacated the stay. (See *Nowlon v. Koram Ins. Center, Inc.*, *supra*, 1 Cal.App.4th at pp. 1440-1441 [order sustaining demurrer deemed to include an appealable judgment of dismissal]; *Munoz v. Davis* (1983) 141 Cal.App.3d 420, 431 [order sustaining demurrer treated as appealable judgment].)

4.

B.     Standard of Review for Demurrers

When a demurrer is sustained, appellate courts conduct a de novo review to determine whether the pleading alleges facts sufficient to state a cause of action under any legal theory.[4] (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 204 (*Flores*).) Appellate courts treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. (*Ibid*.) The pleader's contentions or conclusions of law are not controlling because appellate courts must independently decide questions of law without deference to the legal conclusions of either the pleader or the trial court. (*Neilson v. City of California City* (2005) 133 Cal.App.4th 1296, 1304.)

Legal questions that arise at the pleading stage include the interpretation of a statute or the application of a statutory provision to facts assumed to be true for purposes of the demurrer. (*Walker v. Allstate Indemnity Co.* (2000) 77 Cal.App.4th 750, 754.)

II.     PRINCIPLES GOVERNING WRITS OF MANDATE

A.     Statutory Provisions

Section 1085, subdivision (a) provides that a writ of ordinary mandate "may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station …." Section 1086 provides that a writ of mandate "must be issued upon the verified petition of the party beneficially interested." These statutory provisions have been interpreted as identifying two requirements essential to the issuance of the writ— namely, (1) a clear, present and usually ministerial duty upon the part of the respondent

---

[4]     The "any legal theory" standard applicable to demurrers has been explained and applied many times by the California Supreme Court. (E.g., *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 870 [complaint alleged facts sufficient to state a claim for a writ of mandate]; *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38-39 [examination of pleading not limited to plaintiff's theory of recovery or the form or action pleaded].) The Supreme Court's precedent and section 452 establish that judicial scrutiny is not confined to the thrust of the pleading.

and (2) a clear, present and beneficial right in the petitioner to the performance of that duty. (*People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 491.)

In addition, section 1086 provides that a writ of mandate "*must* be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (Italics added.) This statutory text means that the issuance of a writ is mandatory when an adequate legal remedy is not available *and* the other requirements for a writ have been met. (*May v. Board of Directors* (1949) 34 Cal.2d 125, 133-134.)

  B. <u>Case Law Addressing Alternate Remedies</u>

The question whether a writ of mandate remains available when there is an adequate remedy in the ordinary course of law was not explicitly addressed by the Legislature. In other words, "the statute does not expressly forbid the issuance of the writ if another adequate remedy exists …." (*Phelan v. Superior Court* (1950) 35 Cal.2d 363, 366 (*Phelan*).) The California Supreme Court has addressed the Legislature's silence on this aspect of mandamus relief by adopting the "general rule that the writ will not issue if another such remedy was available to the petitioner. [Citations.]" (*Ibid.;* see *Flores*, *supra*, 224 Cal.App.4th at p. 205.)

Incorporating this general rule with the other statutory elements, this court recently stated:

> "Generally, a writ of ordinary mandate will lie when (1) there is no plain, speedy and adequate alternative remedy, (2) the public official has a legal and usually ministerial duty to perform and (3) the petitioner has a clear and beneficial right to performance." (*Menefield*, *supra*, 231 Cal.App.4th at pp. 216-217.)

Whether there is a " 'plain, speedy, and adequate remedy, in the ordinary course of law' " within the meaning of the statute usually is regarded as a question of fact that requires an evaluation of the circumstances of each particular case. (*Flores*, *supra*, 224 Cal.App.4th at p. 206; *Glasser v. Municipal Court* (1938) 27 Cal.App.2d 455, 458.) Appellate courts often state that the resolution of this question of fact is a matter largely

6.

within the sound discretion of the court. (*Flores*, *supra*, at p. 206.) However, existing cases applying the statutory phrase typically address whether an alternative remedy is "plain, speedy, and adequate," rather than whether that remedy is available "in the ordinary course of law." For example, some petitions for writ of mandate are opposed on the ground that an ordinary action at law for damages provides an adequate remedy. (*Tevis v. City & County of San Francisco* (1954) 43 Cal.2d 190, 198 [when municipal employees present a claim for wages, it is generally held that an action for damages is adequate].) Also, when a litigant seeks an extraordinary writ from an appellate court, that court will consider whether a direct appeal provides an adequate remedy for the litigant. (*City of Glendale v. Superior Court* (1993) 18 Cal.App.4th 1768, 1776 [in bifurcated trial, appellate court issued a writ of mandate before the question of damages was tried and a final, appealable judgment was entered].) These cases imply that an action at law for damages and a direct appeal are remedies available "in the ordinary course of law."

The explicit analysis in most cases addresses whether a particular remedy is plain, speedy and adequate. The parties have cited no case directly discussing whether a particular remedy is available "in the ordinary course of law" for purposes of section 1086. We conclude that whether a potential alternate remedy is available "in the ordinary course of law" involves an examination of (1) the legal foundation for that remedy and (2) how the remedy relates to the relief sought by the plaintiff. The legal foundation for the alternate remedy does not vary with the circumstances of a particular case. Similarly, the relief sought by the plaintiff will be stated in the petition and, generally, will not be a matter subject to dispute. Based on the matters that must be evaluated by the court to determine whether the alternate remedy is available in the ordinary course of law, we conclude that question is an issue of law, not of fact. As a legal issue, it is subject to independent review on appeal. (See pt. I.B, *ante*.)

III.    HABEAS CORPUS

    A.    Nature of the Remedy

The writ of habeas corpus predates the California Constitution, which protects its availability by providing that "[h]abeas corpus may not be suspended unless required by public safety in cases of rebellion or invasion." (Cal. Const., art. I, § 11.)  In addition, certain aspects of the writ of habeas corpus are addressed in Penal Code sections 1473 through 1508.  For instance, a "person unlawfully imprisoned or restrained of his or her liberty, under any pretense, may prosecute a writ of habeas corpus to inquire into the cause of his or her imprisonment or restraint." (Pen. Code, § 1473, subd. (a).)

Courts routinely describe habeas corpus as an "'extraordinary remedy.'" (*In re Clark* (1993) 5 Cal.4th 750, 764, fn. 3.)  Sometimes, habeas corpus is referred to as "the 'Great Writ.'" (*Id*. at p. 763.)  As an extraordinary remedy, a writ of habeas corpus in not available when an alternative remedy is available. (*People v. Johnson* (2015) 235 Cal.App.4th 80, 88.)

    B.    Habeas Corpus Relief and the Ordinary Course of Law

Given that a writ of habeas corpus is an extraordinary remedy that usually addresses unlawful imprisonment or restraint of liberty, we conclude that it is not available "in the ordinary course of law" (§ 1086) when the relief sought is an order compelling CDCR personnel to process an inmate grievance in accordance with the Regulations.  This interpretation of the *ordinary* course of law is supported by tradition. The California Supreme Court has stated that a writ of mandate "is the traditional remedy for the failure of a public official to perform a legal duty.  [Citations.]" (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442.)

Consequently, the demurrer should not have been sustained on the ground that a writ of habeas corpus was the more appropriate remedy.

8.

C.    Adequacy of Villery's Pleadings

In *Menefield*, *supra*, 231 Cal.App.4th 211, this court held that CDCR appeals coordinators had a ministerial duty to screen inmate grievances submitted on CDCR Form 602 and did not have the discretionary authority to ignore such submissions. (*Id.* at p. 217.) Here, Villery's exhibits to his petition included the CDCR Form 602's that he completed and submitted in connection with his grievances. Furthermore, he alleged that "all applicable time deadlines for prison staff to respond to these [grievances] have expired."[5]

Based on these allegations, we conclude that Villery alleged sufficient facts to state a claim for a writ of mandate to enforce a ministerial duty set forth in the Regulations. (§ 430.10, subd. (e).)

IV.    IMPROPER CONSTRUCTION OF VILLERY'S PETITION[*]

As an alternate ground for reversal, Villery contends the superior court abused its discretion when it failed to construe his mandamus petition as a petition for writ of habeas corpus. This contention is easily decided under the well-established principles governing general demurrers. We address this alternate ground here to fully resolve the issues raised in Villery's briefing.

When reviewing a pleading challenged by a general demurrer, the court determines whether the pleading alleges facts sufficient to state a cause of action *under any legal theory*. (*Flores*, *supra*, 224 Cal.App.4th at p. 204.) California courts have long departed from holding a plaintiff to the form of action pleaded and are not limited to the plaintiff's theory of recovery. (*Quelimane Co. v. Stewart Title Guaranty Co.*, *supra*, 19

---

**5**      The time limits for the three levels of response to an inmate grievance are set forth in Regulations section 3084.8, subdivision (c). The first level response shall be completed and returned to the inmate within 30 working days from the date of receipt. (Regulations, § 3084.8, subd. (c)(1).)

*      See footnote, *ante*, page 1.

Cal.4th at pp. 38-39.) Thus, in the context of a petition for an extraordinary writ, the form or label of that pleading should not be placed over the substance of its factual allegations and the relief sought. (See *Berman v. Cate* (2010) 187 Cal.App.4th 885, 892.) The rules for interpreting a pleading and the court's "inherent power to treat a petition for writ of mandate as one for habeas corpus" (*ibid*.), lead us to conclude that dismissal of Villery's petition was erroneous. If habeas corpus actually had been the more appropriate form of the petition, the trial court should have (1) construed Villery's pleading as habeas petition, (2) concluded it stated a claim for such relief, and (3) overruled the demurrer.

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its order sustaining the demurrer without leave to amend and enter a new order overruling the demurrer.

_____
FRANSON, J.

WE CONCUR:

_____
LEVY, ACTING P.J.

_____
DETJEN, J.

10.