Filed 4/8/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CLIFFORD ALAN DILBERT,<br><br>       Plaintiff and Appellant,<br><br>  v.<br><br>GAVIN NEWSOM, as Governor, etc.,<br><br>       Defendant and Respondent. | C096274<br><br>(Super. Ct. No. 34-2018-80003003-CU-WM-GDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Steven M. Gevercer, Judge. Affirmed.

Clifford Alan Dilbert, in pro. per., for Plaintiff and Appellant.

Rob Bonta, Attorney General, Sara J. Romano, Senior Assistant Attorney General, Julie A. Malone, Supervising Deputy Attorney General, Yun Hwa Harper, Deputy Attorney General, for Defendant and Respondent.

SUMMARY OF THE APPEAL

Petitioner and appellant Clifford Alan Dilbert sought a petition for writ of mandate to compel respondent and appellee Governor Gavin Newsom to process his applications

1

and reapplications for clemency/commutation, to render a decision on those applications, and to notify Dilbert of the decision in a timely manner. The trial court sustained the Governor's demurrer to the petition without leave to amend, concluding Dilbert does not have a due process right to have his applications processed within a particular time frame and the law imposes no duty to process clemency applications within a particular time frame. Dilbert appeals. We affirm the trial court's order.

## FACTS AND HISTORY OF THE PROCEEDINGS

### Petition for Writ of Mandate

According to the operative amended petition for writ of mandate (writ petition), in 2016 and 2017, Dilbert filed petitions for clemency and/or commutation of his prison sentence with the Governor's office. He filed reapplications with the Governor's office in 2019 and 2021. Dilbert has not received any communication from the Governor's office that his clemency petition has been received or processed.

Instructions made available online by the Governor's office (instructions), which Dilbert attached to the writ petition state, "[i]n deciding whether to grant a commutation, the Governor's Office will carefully review each commutation application" and consider various enumerated factors. The instructions also say, "[a]pplicants will be notified when the Governor takes action on a commutation application." The instructions further state that, "[i]f you submitted a commutation application to a prior governor and did not receive notice of a commutation grant, your application is deemed closed. If you submitted a commutation application in the last three years and would like Governor Newsom to re-open your prior application and consider it, you may submit a Reapplication for Clemency." The instructions then explain the process for reapplication.

The writ petition seeks a writ of mandate "direct[ing] the Governor to adhere to his ministerial duty" to process Dilbert's clemency petitions and reapplications, "render a decision on those filings," and "inform [Dilbert] of the decision in a timely fashion."

2

In the writ petition, Dilbert alleged that the Governor had a clear, present, and ministerial duty to process his petitions. Dilbert asserted he has due process rights under the Fourteenth Amendment of the U.S. Constitution and article I, section 7 of the California Constitution to have his application processed. He also states, based on the language in the instructions, that the Governor is "legally obligated by [his] own application language as well as Due Process to" review clemency applications and reapplications and to notify applicants once the Governor has acted on the applications.

Demurrer and Judgment

The Governor filed a demurrer to the petition. The court ordered the California Department of Corrections and Rehabilitation to allow Dilbert to participate in the hearing on the demurrer either by Zoom or telephone. Dilbert and counsel for the Governor appeared at the hearing on the demurrer by Zoom. On March 30, 2022, the trial court issued an order sustaining the demurrer without leave to amend. Dilbert filed his notice of appeal on May 11, 2022.

DISCUSSION

I

*Nature of Writ Relief and Standard of Review*

"A writ of mandate will lie to 'compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station' (Code Civ. Proc., § 1085) 'upon the verified petition of the party beneficially interested,' in cases 'where there is not a plain, speedy, and adequate remedy, in the ordinary course of law.' (Code Civ. Proc., § 1086.) The writ will issue against a county, city or other public body or against a public officer. [Citations.] However, the writ will not lie to control discretion conferred upon a public officer or agency. [Citations.] Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon

3

the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty [citation]." (*People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 490-491, fn. omitted.)

"When a demurrer is sustained," to a petition for writ, "appellate courts conduct a de novo review to determine whether the pleading alleges facts sufficient to state a cause of action under any legal theory. [Citation.] Appellate courts treat the demurrer as admitting all material facts properly pleaded," and accept as true facts which may be properly judicially noticed, "but do not assume the truth of contentions, deductions or conclusions of law. [Citation.] The pleader's contentions or conclusions of law are not controlling because appellate courts must independently decide questions of law without deference to the legal conclusions of either the pleader or the trial court." (*Villery v. Department of Corrections & Rehabilitation* (2016) 246 Cal.App.4th 407, 413, fn. omitted; *Ellena v. Department of Ins.* (2014) 230 Cal.App.4th 198, 205.) " 'Reversible error exists only if facts were alleged showing entitlement to relief under any possible legal theory. [Citations.]' " (*Ashlan Park Center LLC v. Crow* (2015) 233 Cal.App.4th 1274, 1278, quoting *Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.)

We also note "a fundamental principle of appellate procedure [is] that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.)

Each argument made in an appellate brief must be "under a separate heading or subheading summarizing the point," and each point must be supported "by argument and, if possible, by citation of authority." (Cal. Rules of Court, rule 8.204(a)(1)(B).) When a party fails to place an argument under a proper heading or subheading, we need not consider the issue. (See *Sierra Club v. City of Orange* (2008) 163 Cal.App.4th 523, 542; *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 726.) Moreover, the

4

obligation to support points with argument and citations to authority, requires more than simply stating a bare assertion that the judgment "is erroneous and leaving it to the appellate court to figure out why; it is not the appellate court's role to construct theories or arguments that would undermine the judgment and defeat the presumption of correctness." (Eisenberg et. al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2022) ¶ 8:17.1; see also *Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 565 [quoting Eisenberg when finding an appellant's argument could not prevail on the grounds the appellant failed to "develop a reasoned argument supported by legal authority"]; *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721 [quoting Eisenberg]; *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368 ["This court is not inclined to act as counsel . . . for . . . any appellant and furnish a legal argument"].)

To the extent Dilbert believes he has made an argument that we have not addressed in this decision, we note his briefing lacked the requisite headings and subheadings, and offered very little in the way of developed arguments and citations. And "self-represented parties are ' "held to the same restrictive procedural rules as an attorney." ' (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247 [].) 'A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation.' (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 985 [].)" (*Burkes v. Robertson* (2018) 26 Cal.App.5th 334, 345.)

II

*Nature of and Law Governing Clemency*

"The general authority to grant reprieves, pardons and commutations of sentence is conferred upon the Governor by Section 8 of Article V of the Constitution of the State of California." (Pen. Code, § 4800.) California Constitution, article V, section 8, subdivision (a), provides: "Subject to application procedures provided by statute [(Pen

Code, §§ 4800–4813)], the Governor, on conditions the Governor deems proper, may grant a reprieve, pardon, and commutation, after sentence, except in case of impeachment.  The Governor shall report to the Legislature each reprieve, pardon, and commutation granted, stating the pertinent facts and the reasons for granting it.  The Governor may not grant a pardon or commutation to a person twice convicted of a felony except on recommendation of the Supreme Court, 4 judges concurring.”  “Commutation is a reduction in punishment; a pardon is the remission of guilt and relief from the legal consequences of the crime; and a reprieve is a temporary suspension of execution of sentence.  ([Pen. Code, ]§ 4853 [pardon]; *Way v. Superior Court of San Diego County* (1977) 74 Cal.App.3d 165, 176 [].)”  (*Santos v. Brown* (2015) 238 Cal.App.4th 398, 413-414 (*Santos*).)

“The constitutionally authorized ‘application procedures’ for executive clemency (Cal. Const., art. V, § 8, subd. (a)) are found in Penal Code sections 4800 to 4813.” (*Santos, supra,* 238 Cal.App.4th at p. 414.)

“The power to grant clemency is vested in the executive branch [citations], and is an act of mercy or grace.”  (*People v. Nash* (2020) 52 Cal.App.5th 1041, 1082; *Santos, supra*, 238 Cal.App.4th at p. 419; see also *Ohio Adult Parole Auth. v. Woodard* (1998) 523 U.S. 272, 280-281 (*Ohio*).)

III

*Duty to Process Within a Certain Time*

As a preliminary matter, we observe that neither section 8 of article V of the California Constitution nor any provision of Penal Code sections 4800 to 4813 contains an express requirement that the Governor process clemency applications within a specified time frame.  Indeed, section 8 of article V of the California Constitution and Penal Code sections 4800 to 4813 do not require the Governor to issue decisions on clemency applications at all.  But Dilbert does not argue that the express language of the

6

California constitution or statutes create a ministerial duty for the Governor to act on his application within a "reasonable" time.

Instead, Dilbert depends on two theories. First, he argues that he has a liberty interest and due process right under the Fourteenth Amendment of the United States Constitution and article I, section 7 of the California Constitution to the relief he seeks. Second, he suggests that the language of the instructions and solicitation of applications by the Governor as indicated in those instructions created a duty for the Governor to process the applications.

A. Due Process of Law

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." (*Wilkinson v. Austin* (2005) 545 U.S. 209, 221.) While "[a] state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right . . . , the underlying right must have come into existence before it can trigger due process protection." (*Conn. Bd. of Pardons v. Dumschat* (1981) 452 U.S. 458, 463 (*Dumschat*).)

In *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex* (1979) 442 U.S. 1, 7, the United States Supreme Court explained, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right: '[Given] a valid conviction, the criminal defendant has been constitutionally deprived of his liberty.' *Meachum v. Fano*, 427 U.S. 215, 224, (1976)." In *Dumschat*, *supra*, 452 U.S. at page 464, the Court stated, "*Greenholtz* therefore compels the conclusion that an inmate has 'no constitutional or inherent right' to commutation of his sentence." (See also *Ohio*, *supra*, 523 U.S. at

7

p. 283 ["There is thus no substantive expectation of clemency"]; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 663 [referring to the state constitutional authority for clemency at issue in *Ohio* as "a similarly worded state constitutional provision regarding the pardon authority of a governor"].)  Because the defendant has no federal due process right to clemency, he has no right "to procedures essential to the realization" of clemency. (*Dumschat*, *supra*, 452 U.S. at p. 463; see also *Santos*, *supra*, at p. 421 [quoting *Ohio*, *supra*, 523 U.S. at pp. 280-281, "[t]he due process the inmate sought 'would be inconsistent with the heart of executive clemency, which is to grant clemency as a matter of grace, thus allowing the executive to consider a wide range of factors not comprehended by earlier judicial proceedings and sentencing determinations' "].)

Dilbert fares no better under the California Constitution.  Procedural due process under the California Constitution, "extends potentially to any statutorily conferred benefit, whether or not it can be properly construed as a liberty or property interest." (*Conejo Wellness Center, Inc. v. City of Agoura Hills* (2013) 214 Cal.App.4th 1534, 1562.)  But, "it still requires the deprivation of some statutorily conferred benefit before it is implicated." (*Ibid.*)  California's "[e]xecutive clemency is an ad hoc 'act of grace' that may be granted for any reason without reference to any standards." (*Santos*, *supra*, 238 Cal.App.4th at p. 419.)  Dilbert has pointed to nothing in the California Constitution, article V, section 8; Penal Code section 4800-4813; or any other California law that confers on him the benefit of either clemency or the consideration of an application for clemency.  Hence, we do not find that the Governor has violated Dilbert's state due process right by not yet issuing—and maybe never issuing—a determination on his applications or reapplications.

B.    Instructions Language

Dilbert cites no authority for his argument that application instructions can create an obligation for the Governor to grant discretionary clemency within a certain amount of

time.  Additionally, none of the language in the instructions commits the Governor's office to acting on clemency applications within a specified time frame.  Dilbert's argument that the instructions created a ministerial duty for the Governor to issue a decision within an amorphous "reasonable" time therefore lacks merit.

### DISPOSITION

We affirm the judgment.  In consideration of Dilbert's financial circumstances costs are denied.  (Cal. Rules of Court, rule 8.278(a)(5).)

<br>

_____

HULL, J.

We concur:

_____

EARL, P. J.

_____

WISEMAN, J.*

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.